# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEPHEN JIGGETTS,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL CIPULLO and the DISTRICT OF COLUMBIA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 15-1951 (RBW)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

The plaintiff, Stephen Jiggetts, has asserted common law claims for false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, and slander against the defendants, Daniel Cipullo, individually and in his official capacity as the Director of the Criminal Division of the Superior Court of the District ("Superior Court"), and the District of Columbia, arising out of an event that occurred on November 6, 2014. <u>See generally</u> Third Amended Complaint and Jury Demand ("3d Am. Compl."). Currently before the Court is the Plaintiff's Motion for Leave to File Fourth Amended Complaint ("Pl.'s Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny in part the plaintiff's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to File Fourth Amended Complaint ("Pl.'s Mem."); (2) the Fourth Amended Complaint and Jury Demand (redlined version) ("Proposed 4th Am. Compl."); (3) the Defendants' Opposition to Plaintiff's Motion for Leave to File Fourth Amended Complaint ("Defs.' Opp'n"); and (4) the Plaintiff's Reply to Defendant District of Columbia and Daniel Cipullo's Opposition to Plaintiff's Motion for Leave to File Fourth Amended Complaint and Request for Hearing ("Pl.'s Reply").

# I.    BACKGROUND

Defendant Cipullo is the supervisor of Tenisha Jiggetts, the plaintiff's wife, who is an Attorney-Advisor for the Criminal Division, 3d Am. Compl. ¶¶ 9–10, and the plaintiff is a retired police officer for the Metropolitan Police Department ("MPD"), id. ¶ 51.  On November 6, 2014, the plaintiff and defendant Cipullo encountered each other on the sidewalk between the Superior Court and MPD headquarters after the plaintiff's wife had told the plaintiff that defendant Cipullo had obstructed her ability to leave her office.  See id. ¶¶ 16, 18.  The plaintiff alleges that defendant Cipullo thereafter made false statements to an MPD official, claiming that the plaintiff threatened him during the encounter.  See id. ¶¶ 17, 20–21.  The plaintiff was not arrested on the day that defendant Cipullo initially made his complaint, see id. ¶ 24, but, after defendant Cipullo allegedly further pursued the matter, see id. ¶¶ 38–39, the plaintiff was arrested and detained for approximately ten hours on November 21, 2014, see id. ¶¶ 39–42, after being charged with felony threatening to kidnap or injure a person in violation of D.C. Code § 22-1810 (2012), id. ¶ 42.  The charge was subsequently dismissed with prejudice on September 18, 2015.  Id. ¶ 56.

The plaintiff initiated this action on November 3, 2015, see Complaint at 1, and on November 6, 2017, the plaintiff filed his motion for leave to file a fourth amended complaint, see Pl.'s Mot. at 1.  The plaintiff's Proposed Fourth Amended Complaint adds facts that the plaintiff contends were revealed through discovery, as well as two new claims: (1) a 42 U.S.C. § 1983 claim, alleging violations under the Fourth, Fifth, and Fourteenth Amendments; and, in the alternative, (2) a Bivens action, alleging violations under the same three constitutional amendments.  See Proposed 4th Am. Compl. ¶¶ 138–76.  Discovery closed on December 18, 2017, see Order (Nov. 17, 2017), ECF No. 47, and the Court held a hearing on the plaintiff's motion on December 21, 2017.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), the Court "should freely give leave" to a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2).  While the Court has sole discretion to grant or deny leave to amend, "[l]eave to amend a [pleading] should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." Richardson v. United States, 193 F.3d 545, 548–49 (D.C. Cir. 1999) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see also James Madison Ltd. ex rel. Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."). "The burden is on the defendant[s] to show that leave to file an amended complaint should be denied." Afram v. United Food & Commercial Workers Unions & Participating Emp'rs Health & Welfare Fund, 958 F. Supp. 2d 275, 278 (D.D.C. 2013).

## III.    ANALYSIS

The defendants oppose the plaintiff's motion for leave to again amend his complaint on the grounds that (1) the plaintiff failed to earlier cure deficiencies in his complaint, (2) undue delay and prejudice, and (3) futility. See Defs.' Opp'n at 1.[2]

### A.    The Plaintiff's Failure to Earlier Cure Deficiencies Argument

In their written opposition, the defendants argue that the Court should deny the plaintiff's motion for leave to amend because he does not explain "why he failed to include the [proposed]

---

[2] At the hearing on the motion, the defendants seemingly abandoned their first two grounds and stated that futility was the primary basis of their opposition.  However, even if the first two grounds were not abandoned, the Court concludes that the defendants' positions on these two grounds lack merit.  The defendants also argue that the plaintiff's motion should be denied because he "failed to seek leave . . . to add new claims." Defs.' Opp'n at 4.  This argument plainly lacks merit not only because the defendants fail to cite any legal authority to support their proposition that the motion should be denied on that basis, see id., but also because the plaintiff's motion is titled as a "Motion for Leave to File Fourth Amended Complaint," and in that motion, the plaintiff specifically "requests leave to amend his Third Amended Complaint to add additional facts and claims as set forth in the [Proposed] Fourth Amended Complaint," Pl.'s Mot. at 1.

3

amendments . . . in his previously filed Complaints." Defs.' Opp'n at 4. The defendants note

that at the status conference held on August 31, 2017, the Court ordered the plaintiff to file his

third amended complaint on or before September 22, 2017, see id. at 5; see also Order (Aug. 31,

2017), ECF No. 40, which the plaintiff did, but "[i]n that Complaint, [the p]laintiff brought no

new claims," even though "there was nothing that prevented [him] from bringing his proposed

new claims," Defs.' Opp'n at 5. According to the defendants, "by his own admission, [the

p]laintiff relies on facts known to him or that should have been known to him when he sought to

cure the original [Complaint] and Second Amended Complaint[]." Id. The plaintiff argues in

response that, as of the date he filed his reply on November 28, 2017, the "[d]efendants ha[d] not

responded to most of th[e] discovery" the plaintiff had submitted to them, but that recent

discovery has revealed the actions that defendant Cipullo took "under the authority of his

position with the [ ] Superior Court," which prompted the plaintiff's request to pursue the

proposed constitutional claims. See Pl.'s Reply at 4; see also id. at 6 ("[D]iscovery is ongoing,

and [the plaintiff] seeks leave to amend the complaint to conform to information learned in

discovery so that the case may be tried on its merits.").

At the motion hearing, the plaintiff clarified that the deposition of MPD Commander

William J. Fitzgerald, which was taken on October 17, 2017, see Pl.'s Reply, Exhibit ("Ex.") 1

(Transcript of Commander William J. Fitzgerald ("Fitzgerald Dep.")), revealed how defendant

Cipullo allegedly used the color of his office to have the plaintiff arrested and charged, and the

plaintiff promptly filed his motion for leave less than three weeks later, see Pl.'s Mot. at 1. The

defendants argued in response that Commander Fitzgerald's deposition did not reveal any new

facts, but was based upon documents that the plaintiff already had in his possession, because

Commander Fitzgerald did not have an independent recollection of the relevant events. The

defendants, however, did not submit those documents to the Court to support their assertion that the plaintiff's proposed Fourth Amended Complaint "relies on facts known to him or that should have been known to him when he sought to cure the original [Complaint] and Second Amended Complaint[]." Defs.' Opp'n at 5. Therefore, the Court is unable to evaluate their assertion that the plaintiff already knew the facts forming the basis for his constitutional claims, and thus, the defendants have failed to meet their burden "to show that leave to file an amended complaint should be denied" on this basis. See Afram, 958 F. Supp. 2d at 278. Moreover, even if the plaintiff already knew or should have known about the relevant facts that purportedly support his constitutional claims, the defendants are unable to show any undue prejudice resulting from the filing of another amended complaint. See infra Part III.B.

B.      **The Undue Delay and Undue Prejudice to the Defendants Argument**

The defendants claim that they will be "unfair[ly] disadvantage[d]" and "blindside[d]" if the Court grants the plaintiff's motion because they will "have to expend additional efforts and resources" to address the proposed Fourth Amended Complaint and they "seek closure" in this case, which "has been pending for just over two years." Defs.' Opp'n at 6. The defendants fail to cite any legal authority to support their proposition that the plaintiff's motion should be denied on these bases. The plaintiff argues in response to the defendants' position that "[m]oving to amend the complaint before the close of discovery does not constitute undue delay[, and u]nder Federal Rule of Civil Procedure 15(b), a party may amend the complaint to conform to the evidence at trial or even after trial." Pl.'s Reply at 6 (citing Fed. R. Civ. P. 15(b)). Moreover, the plaintiff claims that his amendments will not "delay this case in any way," Pl.'s Mem. at 2, and at the hearing on the motion for leave to amend, the plaintiff's counsel stated that he would not

seek additional discovery if he is permitted to assert the plaintiff's new claims. Moreover, the defendants do not contend that additional discovery will be necessary either.

Courts liberally assess whether Rule 15 motions should be granted, only denying them on the basis of undue delay when the plaintiffs waited <u>many</u> years before seeking amendments, <u>after</u> discovery had already concluded or summary judgment had already been granted. <u>See, e.g.</u>, <u>Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.</u>, 810 F.2d 243, 247 (D.C. Cir. 1987) (affirming the district court's denial of leave to amend given that six years had passed since the plaintiff had raised the issue underlying his proposed claim and summary judgment had already been granted); <u>Becker v. District of Columbia</u>, 258 F.R.D. 182, 184–85 (D.D.C. 2009) (denying leave to amend because of a five-year delay and discovery had already closed); <u>cf.</u> <u>Barkley v. U.S. Marshals Serv. ex rel. Hylton</u>, 766 F.3d 25, 39 (D.C. Cir. 2014) (reversing the district court's denial of leave to amend, even though "[t]he district court ha[d] endured a multitude of motions and amendments to the pleadings in th[e] case over the course of more than a decade," in part because "[t]he plaintiffs already in the case had raised substantially the same [ ] claims, no summary judgment motion had been granted, and no discovery had taken place as to [certain] claims"). Therefore, a two-year delay between the plaintiff's initiation of this suit and his motion for leave to amend does not constitute undue delay, especially given that discovery was still ongoing as of the date the plaintiff filed his motion.

As for the defendants' argument regarding their need to "expend additional efforts and resources" if the plaintiff's motion is granted, <u>see</u> Defs.' Opp'n at 6, Judge Friedman recently rejected a similar argument in a case that had been pending for over four years, noting:

> "Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely." <u>Does I through III v. District of Columbia</u>, 815 F. Supp. 2d 208, 215 (D.D.C. 2011) (internal quotation marks omitted). "[A]n amendment

> is not automatically deemed prejudicial if it causes the non-movant to
> expend additional resources. Any amendment will require some expenditure of
> resources on the part of the non-moving party. 'Inconvenience or additional cost
> to a defendant is not necessarily undue prejudice.'" <u>United States ex rel. Westrick</u>
> <u>v. Second Chance Body Armor, Inc.</u>, 301 F.R.D. 5, 9 (D.D.C. 2013) (quoting <u>City</u>
> <u>of Moundridge v. Exxon Mobil Corp.</u>, 250 F.R.D. 1, 6–7 (D.D.C. 2008)). Indeed,
> "if [a] court were to employ a policy of denying [ ] leave to amend in every
> situation where an amended [pleading] may result in additional discovery or
> expense, then [the] court would fail to abide by the legal standard of granting leave
> 'freely . . . when justice so requires.'" <u>Hisler v. Gallaudet Univ.</u>, 206 F.R.D. 11, 14
> (D.D.C. 2002) (quoting Fed. R. Civ. P. 15(a)(2)).

<u>United States v. All Assets Held at Bank Julius</u>, 229 F. Supp. 3d 62, 69 (D.D.C. 2017)

(alterations in original) (holding that the United States would not suffer an <u>undue</u> burden if the

Court were to grant the defendant's motion to amend his answer because "[t]he voluminous

amount of material already adduced in discovery on th[e] issue [underlying the proposed

amendment] . . . is strong evidence that additional discovery [as a result of the amendment]

w[ould] not be nearly as burdensome as the United States suggests"). And, given that the

plaintiff is not seeking to extend discovery and the defendants do not contend that they will need

additional discovery if the plaintiff is permitted to assert his new claims,, the defendants cannot

show that they will be unduly prejudiced on that basis.

At the hearing on the motion to amend, the defendants' counsel stated that they would

also suffer undue prejudice because the plaintiffs' proposed claims are futile, but that is a

separate ground for denying the plaintiffs' motion, not a type of undue prejudice. <u>See</u>

<u>Richardson</u>, 193 F.3d at 548–49 (stating that leave to amend "should be freely given in the

absence of . . . undue prejudice to the opposing party . . . , <u>or</u> futility" (emphasis added)).

Therefore, the Court concludes that the defendants have not shown that they will suffer undue

prejudice if the plaintiff is permitted to again amend his complaint.

**C.    Futility**

1.    The Proposed <u>Bivens</u> Claim

"Under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S.

388, 395–97 (1971), a[ ] plaintiff may pursue a lawsuit for damages against federal officials in

their personal capacities for constitutional violations." <u>Jordan v. District of Columbia</u>, 113 F.

Supp. 3d 278, 280 (D.D.C. 2015).  The plaintiff's Proposed Fourth Amended Complaint asserts a

<u>Bivens</u> action "to redress the deprivation under color of statute, ordinance, regulation, policy,

custom, practice or usage of a right, privilege and immunity secured to the plaintiff by the Fourth

and / or Fifth [ ] and / or Fourteenth Amendment[s] to the United States Constitution."  Proposed

4th Am. Compl. ¶ 158.  Specifically, the plaintiff alleges that "[d]efendant Cipullo . . . deprived

[him] of clearly established rights protected by" these three amendments, <u>id.</u> ¶ 159, or, in the

alternative, "deprived [him] of his liberty when [defendant] Cipullo used his position and federal

authority as a Director of the . . . Criminal Division to cause [the plaintiff] to be detained and

arrested in violation of his rights to due process and to be free from unreasonable restrictions on

his liberty interests," <u>id.</u> ¶ 161; <u>see also id.</u> ¶ 163 ("In the alternative, absent his authority as a

federal actor, [defendant] Cipullo would not have been able to influence the police officers and

prosecutors to take action against [the plaintiff] in violation of his constitutional rights.").

The defendants argue that defendant Cipullo is not a federal actor, and cite D.C. Code

§ 11-1726(b)(1) (2011) in support of this proposition.  <u>See</u> Defs.' Opp'n at 6.  That section of the

D.C. Code, titled "Compensation and benefits for court personnel," states that "[n]onjudicial

employees of the District of Columbia courts shall be treated as employees of the Federal

Government solely for purposes of any of the following provisions of title 5, United States

Code," which concern workers' compensation, retirement benefits, and life and health insurance

and other related benefits.  See D.C. Code § 11-1726(b)(1).  The plaintiff argues in response that

unless the defendants are conceding that defendant Cipullo is not a federal employee, he "is

permitted to plead in the alternative under Federal Rule of Civil Procedure 8(d) and has done

exactly that."  Pl.'s Reply at 12.  The plaintiff cites Brown v. Short, 729 F. Supp. 2d 125 (D.D.C.

2010), for the proposition that whether § 1983 or Bivens is applicable to certain District of

Columbia employees is "a close question that poses complex legal issues."  Pl.'s Reply at 12

(quoting Brown, 729 F. Supp. 2d at 132).

 To the Court's knowledge, the District of Columbia statute cited by the defendants has

been cited only in two cases, both concerning labor disputes.  See Concerned Court Emps. v.

Polansky, 478 A.2d 1096, 1098 (D.C. 1984) (holding that the actions of the Executive Officer of

the District of Columbia Courts complied with § 11-1726(b)(1) in setting compensation levels

for nonjudicial employees); Ass'n of Court Reporters of Superior Court v. Superior Court for

Dist. of Columbia, 424 F. Supp. 90, 93–94 (D.D.C. 1976) (holding that the overtime pay

provisions of the Fair Labor Standards Act did not apply to Superior Court court reporters).  In

the Court's view, the statute is not dispositive on the issue of whether Superior Court employees

like defendant Cipullo should be considered state or federal officials in regards to claims alleging

constitutional violations.

 Usually, most District of Columbia officials are not treated as federal officials subject to

a Bivens action.  See, e.g., Jordan, 113 F. Supp. 3d at 281 (dismissing the plaintiff's Bivens

action against the Mayor of the District of Columbia because the Mayor is not a federal official

or employee).  Although the Superior Court is distinct from other District of Columbia entities

because it "is a congressionally created court and, thus, 'federal' in its creation," it is often

treated like a state court for purposes of abstention, removal, and certiorari.  See Handy v. Shaw,

Bransford, Veilleux & Roth, 325 F.3d 346, 351 & n.5 (D.C. Cir. 2003) (treating a Superior Court proceeding as a parallel state court proceeding for purposes of the Colorado River abstention doctrine); cf. Johnson v. Gov't of Dist. of Columbia, 584 F. Supp. 2d 83, 93 (D.D.C. 2008) ("Thus, it is unclear—and the Court need not determine—the degree to which the District of Columbia Superior Court and the District of Columbia Court of Appeals can truly be considered 'integral' to the District of Columbia government . . . ."). In Johnson, Judge Collyer held that the District of Columbia could not be held liable for the actions of the United States Marshal for the Superior Court because "[t]he Superior Court Marshal's authority stems directly from the relevant provisions of the [federal] Anti-Drug Abuse Act, as it does for every other United States Marshal." 584 F. Supp. 2d at 92. And in Brown, Judge Collyer held that the constitutional claims asserted against a former United States Marshals Service Detention Security Offer working in the Superior Court should be asserted under Bivens, not § 1983, because the Marshal "was following U.S. Marshal policy without regard to the order of a [Superior Court] judicial officer[, and i]n this position, she was a federal actor analogous to the U.S. Marshal[] for the Superior Court, to whom [§] 1983 does not apply." 729 F. Supp. 2d at 133.

Because whether defendant Cipullo was allegedly acting under color of federal as opposed to state law in his position of Director of the Criminal Division of the Superior Court is not clear to the Court given the limited factual record available to it at this stage of the case, and because the plaintiff is permitted by the Rules to allege claims in the alternative, see Fed. R. Civ. P. 8(d)(2) ("A party may set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."),

the Court is unable to conclude at this stage of the litigation whether the plaintiff's <u>Bivens</u> claim is futile.

2.      The Proposed Claims Asserting Violations of the Fourteenth Amendment

As noted earlier, the plaintiff's Proposed Fourth Amended Complaint asserts both § 1983 and <u>Bivens</u> claims "to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the plaintiff by the Fourth and / or Fifth [ ] and / or Fourteenth Amendment to the United States Constitution." Proposed 4th Am. Compl. ¶¶ 139, 158.  The defendants argue that the plaintiff cannot assert claims for violations of his Fourteenth Amendment rights because this amendment only applies to states, not the District of Columbia.  Defs.' Opp'n at 7.  The plaintiff appears to concede this point, stating that "[t]he applicability of the Fourteenth Amendment is irrelevant to the fact that [the p]laintiff has plead[ed] sufficient facts to create [a] cognizable claim that he was deprived of his right to due process under the Fifth Amendment."  Pl.'s Reply at 12.

The Court agrees with the defendants that the plaintiff's proposed claims asserting violations of the Fourteenth Amendment are futile because the Supreme Court made clear in <u>Bolling v. Sharpe</u> that the Fourteenth Amendment applies only to the states, and not to the District of Columbia.  <u>See</u> 347 U.S. 497, 499–500 (1954) (holding that school segregation in the District of Columbia violated the equal protection component of the Fifth Amendment's Due Process Clause); <u>see also</u> <u>Butera v. District of Columbia</u>, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001) ("Claims of substantive due process violations by State officials are generally analyzed under the Due Process Clause of the Fourteenth Amendment . . . .  While the District of Columbia is not a state, it is subject to the Due Process Clause of the Fifth Amendment . . . ."); <u>Fouch v. District of Columbia</u>, 10 F. Supp. 3d 45, 49 n.1 (D.D.C. 2014) (noting that the Fourteenth Amendment is

not applicable to the District of Columbia); Speed v. Mills, 919 F. Supp. 2d 122, 128 (D.D.C. 2013) (dismissing the plaintiff's § 1983 claim alleging Fourteenth Amendment violations against the District of Columbia).  Therefore, asserting a claim for violations of the Fourteenth Amendment is futile, and the plaintiff cannot amend his complaint to raise the claim.

      3.      The Proposed Claims Asserting Violations of the Fifth Amendment

The defendants also argue that the plaintiff cannot assert his substantive due process claims under the Fifth Amendment because such claims may only proceed if the claim "is not 'covered by a specific constitutional provision, such as the Fourth or Eighth Amendment,'" Defs.' Opp'n at 8 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)), and the plaintiff's constitutional false arrest and malicious prosecution claims are covered by the Fourth Amendment, id. at 8–9.  The plaintiff argues in response that "[t]he District of Columbia [Circuit] has not specifically held that malicious prosecution claims fall under the Fourth Amendment," Pl.'s Reply at 11 (citing Pitt v. District of Columbia, 491 F.3d 494, 511 (D.C. Cir. 2007)), and that, in any event, he "alleges more than just mere unlawful seizure," id.  According to the plaintiff, defendant

> Cipullo used his position as an employee of the District of Columbia not only to initiate a false prosecution against [the plaintiff], but also made false statements to ensure the prosecution took place and to have [the plaintiff] barred from the otherwise public courthouse, and intentionally interfered with [the plaintiff's] ability to live a life free from unwarranted interference by the government.

Id.

In Pitt, the Circuit, after noting that it "ha[d] not yet addressed whether malicious prosecution can give rise to a violation of the Fourth Amendment," "join[ed] the large majority of circuits in holding that malicious prosecution is actionable under 42 U.S.C. § 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized' without

probable cause, in violation of the Fourth Amendment."  491 F.3d at 510–11; see also Amobi v.

Dist. of Columbia Dep't of Corrections, 755 F.3d 980, 993 (D.C. Cir. 2014) (analyzing the

plaintiff's constitutional malicious prosecution claim under the Fourth Amendment, but holding

that the defendants were entitled to qualified immunity because the alleged violation of

constitutional rights was not clearly established).  Another member of this Court has interpreted

Pitt to allow constitutional malicious prosecution claims to proceed as long as there is a predicate

Fourth Amendment violation.  See Thorp v. District of Columbia, 142 F. Supp. 3d 132, 145

(D.D.C. 2015) ("[The plaintiff] seeks to advance the [malicious prosecution] claim under Section

1983, which, in this circuit, requires a predicate Fourth Amendment violation." (citing Pitt, 491

F.3d at 511)).  Therefore, the defendants are correct that the plaintiff's constitutional malicious

prosecution claims are cognizable under the Fourth Amendment, and not the Fifth Amendment,

because the plaintiff's claims that his constitutional rights were violated concern defendant

Cipullo's actions that allegedly caused the plaintiff "to be detained and arrested in violation of

his rights to due process and to be free from unreasonable restrictions on his liberty interests and

unlawfully arrested and detained," Proposed 4th Am. Compl. ¶ 142, which fall under the Pitt

requirement of an unreasonable seizure, see 491 F.3d at 511; see also Lewis, 523 U.S. at 841

("[I]f a constitutional claim is covered by a specific constitutional provision, . . . the claim must

be analyzed under the standard appropriate to that specific provision, not under the rubric of

substantive due process." (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997))).[3]

        As for the plaintiff's claim that defendant Cipullo also caused him to be barred from the

Superior Court in violation of his substantive due process rights, see Pl.'s Reply at 11, the

---

[3] The plaintiff's assertion that defendant Cipullo "also made false statements to ensure the prosecution took place," Pl.'s Reply at 11, is encompassed by the malicious prosecution claim, and does not assert a separate constitutional violation.

allegations in the Proposed Fourth Amended Complaint do not support that this actually occurred. The Proposed Fourth Amended Complaint does contain facts alleging that defendant Cipullo met with a Superior Court employee about the incident with the plaintiff, see Proposed 4th Am. Compl. ¶ 36, and that Superior Court employees, including former Chief Judge Satterfield, considered whether to bar the plaintiff from the courthouse, see id. ¶¶ 37–43; however, it does not allege that former Chief Judge Satterfield, former MPD Chief Cathy Lanier, Chief Security Officer Richard Parris, or any other Superior Court or District employee actually barred the plaintiff from entering Superior Court as a result of alleged discussions with defendant Cipullo, see generally id. Rather, the plaintiff contends that he was granted pretrial release on the condition that he stay away from Superior Court, but that the condition was imposed by the presiding judge or a magistrate judge on the basis of the information before that judicial officer, not because of defendant Cipullo's alleged meetings or conversations with other Superior Court employees. See id. ¶ 59.[4] Therefore, the Court concludes that the only substantive due process claims actually alleged in the Proposed Fourth Amended Complaint concern the alleged false arrest and malicious prosecution of the plaintiff, which both fall under the ambit of the Fourth Amendment, not substantive due process. See Lewis, 523 U.S. at 841. Accordingly, the plaintiff's claims alleging violations of his Fifth Amendment substantive due process rights are futile, and cannot be a basis for permitting the plaintiff to further amend his complaint.

4. The Proposed Claims Asserting Violations of the Fourth Amendment Against the District of Columbia

The defendants argue that the plaintiff "has failed to properly plead municipal liability against the District under § 1983" because municipal liability "does not allow for respondeat

---

[4] The plaintiff's pretrial release condition cannot be challenged here given judicial immunity. See Sibley v. Roberts, 224 F. Supp. 3d 29, 36 (D.D.C. 2016) (Walton, J.) (noting that judicial immunity extends to "function[s] normally performed by a judge" (quoting Mireles v. Waco, 502 U.S. 9, 12 (1991)), aff'd, 696 F. App'x 526 (D.C. Cir. 2017).

superior liability"; instead, "[a] § 1983 plaintiff must identify a municipal policy, custom, or

practice that caused the plaintiff's alleged constitutional injury." Defs.' Opp'n at 9. In response,

the plaintiff argues that defendant Cipullo's conduct "involved much more than the sole incident

on November 6, 2014," and that he "directly implicated the policy or custom of the District of

Columbia under which he acted, at least on November 6, 2014." Pl.'s Reply at 10. According to

the plaintiff,

> [o]ne policy or custom that implicates the District of Columbia as a defendant, apart
> from its respondeat superior liability under the common-law counts, is that a private
> citizen cannot ordinarily seek out a warrant for someone's arrest, as [defendant]
> Cipullo tried to do based on his status as an employee at the [ ] Superior Court.

Id.

"In order to hold a municipality liable for civil rights violations of its employees under 42

U.S.C. § 1983, the municipality must have acted in accordance with a 'government policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy.'" Sanders v. District of Columbia, 522 F. Supp. 2d 83, 87–88 (D.D.C.

2007) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694

(1978)); see Feirson v. District of Columbia, 506 F.3d 1063, 1066 (D.C. Cir. 2007) ("[T]o

impose liability on the District under 42 U.S.C. § 1983, [the plaintiff] must show not only a

violation of his rights under the Constitution or federal law, but also that the [District's] custom

or policy caused the violation." (alterations in original) (internal quotation marks omitted)).

"Respondeat superior or vicarious liability will not attach under § 1983, and therefore[,] a

municipality cannot be held liable solely because it employs a tortfeasor." Burnett v.

Sharma, 511 F. Supp. 2d 136, 141 (D.D.C. 2007) (Walton, J.) (internal quotation marks and

citations omitted). Accordingly, to survive a motion to dismiss, a complaint asserting a § 1983

claim "must allege a predicate violation of some constitutional right, and allege facts that would

show that a custom or policy of the District of Columbia was the 'moving force' behind the alleged constitutional violation." Agnew v. Gov't of District of Columbia, 263 F. Supp. 3d 89, 94 (D.D.C. 2017) (citing Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003)), appeal docketed, No. 17-7114 (D.C. Cir. July 27, 2017). "The order in which a court undertakes each analytical step is not important." Yancey v. District of Columbia, 991 F. Supp. 2d 171, 176 (D.D.C. 2013) (citing cases).

"When a plaintiff seeks to establish 'custom and policy' municipal liability under § 1983 in the absence of an express policy, []he must allege 'concentrated, fully packed, precisely delineated scenarios' as proof that an unconstitutional policy or custom exists." Page v. Mancuso, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting Parker v. District of Columbia, 850 F.2d 708, 712 (D.C. Cir. 1988)). "To clear this high hurdle, plaintiffs ordinarily couch 'custom or practice' liability on allegations of 'practices so persistent and widespread as to practically have the force of law.'" Id. (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). In other words, "[t]he law is clear that '[p]roof of a single incident of unconstitutional activity is insufficient to impose liability unless there was proof that there was a policy in place that was unconstitutional.'" Mehari v. District of Columbia, __ F. Supp. 3d __, __, 2017 WL 3283854, at *7 (D.D.C. July 28, 2017) (second alteration in original) (quoting Sanders, 522 F. Supp. 2d at 88); see also Sanders, 522 F. Supp. 2d at 88 ("The policy or custom must be pervasive to support municipal liability.").

Here, the plaintiff has failed to sufficiently allege a District of Columbia policy or custom regarding a Superior Court employee's ability to seek an arrest warrant, having alleged only a single incident of defendant Cipullo, or any other Superior Court employee, allegedly using the color of his or her office to "seek out a warrant for someone's arrest," i.e., defendant Cipullo's

actions with regard to the plaintiff in November 2014.  See Pl.'s Reply at 10.  Therefore, the one

incident of allegedly unconstitutional behavior is insufficient to qualify as pervasive.[5]  See

Sledge v. District of Columbia, 63 F. Supp. 3d 1, 28 (D.D.C. 2014) (holding that the plaintiff

failed to establish the District's municipal liability under § 1983 because the plaintiff "cite[d]

only his own reports of discriminatory and retaliatory misconduct, and the MPD's failure to

investigate those reports," but failed to "identif[y] any other similar reports that the District

allegedly ignored").  Accordingly, the Court concludes that the plaintiff's proposed § 1983 claim

against the District of Columbia cannot be a basis for the amendment of his complaint because it

would be futile to permit him to do so.

5.     The Proposed Claims Asserting Violations of the Fourth Amendment Against
       Defendant Cipullo

i.      State Actor Requirement

The defendants argue that the plaintiff's "proposed Fourth Amendment violation against

[d]efendant Cipullo cannot be maintained since [d]efendant Cipullo was not a state actor when

the incident giving rise to this lawsuit occurred."  Defs.' Opp'n at 10.  The defendants, however,

appear to limit what they consider the "incident" to be to only the altercation outside the Superior

Court on November 6, 2014.  See id. at 10–11.

---

[5] The Court notes that the Supreme Court has held that "municipal liability may be imposed for a single decision by
municipal policymakers under appropriate circumstances," but that is only the case if "the decision to adopt that
particular course of action is properly made by [the] government's authorized decisionmakers" and "represents an
act of official government 'policy.'"  Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986).  Here, there is no
allegation that defendant Cipullo was authorized to make official government policy regarding a Superior Court
employee's ability to seek an arrest warrant, and even if he had such authority, that he actually adopted such a
policy.  See generally Pl.'s Reply; Proposed 4th Am. Compl; see also Singletary v. District of Columbia, 766 F.3d
66, 74 (D.C. Cir. 2014) (holding that the Parole Board's decision to revoke the plaintiff's parole based on unreliable
hearsay "was not an 'act of the municipality' for purposes of § 1983 because "[n]either the Board as a whole nor the
three-member quorum that revoked [the plaintiff's] parole was authorized to promulgate general rules or other
policies" on behalf of the District).

The Supreme Court has explained that "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law." Griffin v. Maryland, 378 U.S. 130, 135 (1964). Therefore, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." Jackson v. Metro Edison Co., 419 U.S. 345, 351 (1974).

The Court agrees with the plaintiff that he has alleged that defendant Cipullo's "conduct as a state actor involved much more than the sole incident on November 6, 2014," Pl.'s Reply at 10, because the Proposed Fourth Amended Complaint contains numerous factual allegations regarding defendant Cipullo's conduct from November 6, 2014, the day of the altercation between the plaintiff and defendant Cipullo, through November 20, 2014, when a warrant was issued for the plaintiff's arrest. These actions include defendant Cipullo allegedly informing MPD officers during his initial interview on November 6 that he was a director at the Superior Court, see Proposed 4th Am. Compl. ¶¶ 23, 25; asking one of his supervisors to go to the police station so she could be interviewed, id. ¶ 26; discussing the matter with another one of his supervisors, id. ¶ 30; calling the former presiding judge of the Criminal Division, Judge Robert E. Morin, to tell him that he had been threatened by the plaintiff, id. ¶ 31; see also id. ¶ 43 (thanking former Chief Judge Satterfield "for his support in the matter"); discussing the incident with the Deputy Director of the Criminal Division, id. ¶ 32; and meeting with various Superior Court employees about the incident, id. ¶¶ 33, 36. Treating the plaintiff's factual allegations as true and giving him the benefit of all reasonable inferences, as the Court must, see Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006), the Court concludes that the plaintiff

has sufficiently alleged that defendant Cipullo "possessed state authority and purport[ed] to act under that authority," see Griffin, 378 U.S. at 135, if not solely because of his initial encounter with the plaintiff, then also as a result of his actions following the encounter—namely, informing the interviewing MPD officers of his official position at the Superior Court, discussing the matter with various Superior Court employees, and encouraging at least one of those employees to speak with MPD, see Proposed 4th Am. Compl. ¶¶ 23, 25, 26, 30–33, 36, 43—that ultimately led the MPD to revisit its investigation and arrest and charge the plaintiff with a criminal offense.

ii.     Qualified Immunity

The defendants argue that even if defendant Cipullo is considered a state actor under § 1983, he is entitled to qualified immunity. See Defs.' Opp'n at 11. According to the defendants,

> it is undisputed that [the p]laintiff approached [d]efendant Cipullo outside the courthouse to discuss his conduct with [the p]laintiff's wife who worked with [d]efendant Cipullo. While [the p]laintiff may not believe he threatened [d]efendant Cipullo, [d]efendant Cipullo felt threatened, called the police and [the p]laintiff was subsequently arrested, and prosecuted. Even if he was mistaken in that [the p]laintiff was not threatening him, [d]efendant Cipullo would be entitled to qualified immunity. No reasonable juror could find that [d]efendant Cipullo did not feel threatened after being approached by the husband of the wife who he supervised and who was questioning him about his interactions with his wife. Accordingly, no basis exists to allow [the p]laintiff to add a constitutional claim to his Complaint given that the claim would be barred against [d]efendant Cipullo based on qualified immunity.

Id. at 12 (internal citations omitted).

In response, the plaintiff contends that "[q]ualified immunity is available only to government officials sued in their personal and not official capacity." Pl.'s Reply at 12. This position is plainly incorrect. As the Supreme Court has held, "Government officials are entitled to qualified immunity with respect to 'discretionary functions' performed in their official

capacities." Ziglar v. Abbasi, __ U.S. __, __, 137 S. Ct. 1843, 1866 (2017) (emphasis added).

The Court continued:

> Whether qualified immunity can be invoked turns on the "objective legal reasonableness" of the official's acts. And reasonableness of official action, in turn, must be "assessed in light of the legal rules that were clearly established at the time [the action] was taken." This requirement—that an official loses qualified immunity only for violating clearly established law—protects officials accused of violating "extremely abstract rights."

Id. (alteration in original) (internal citations omitted). Therefore, the fact that defendant Cipullo is being sued in his official capacity does not preclude him from pursuing a qualified immunity defense.

The plaintiff further argues in opposition to defendant Cipullo's qualified immunity position that defendant Cipullo violated the plaintiff's right to be free from an unreasonable seizure, and that he "was aware that he was violating [the plaintiff's] rights when he initiated the malicious prosecution of [the plaintiff] and took other actions against him." Pl.'s Reply at 13. The plaintiff notes that defendant Cipullo, as Director of the Superior Court's Criminal Division, has "knowledge of the law," but that "[e]ven without this particular legal knowledge, a reasonable person would conclude that falsely initiating legal proceedings against someone is a violation of that person's rights." Id.

The qualified immunity analysis consists of two prongs: (1) "whether the facts alleged show that the government official's conduct violated a 'constitutional right,'" and (2) "whether that right was 'clearly established' at the time of the incident." Olaniyi v. District of Columbia, 763 F. Supp. 2d 70, 100 (D.D.C. 2011) (Walton, J.). "With respect to the second step, the 'relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (omission in original) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Courts are "permitted to . . . decid[e] which of the

two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009)). "In assessing whether a party is entitled to qualified immunity, the facts must be taken in the light most favorable to the party asserting the constitutional injury." Pitt v. District of Columbia, 558 F. Supp. 2d 11, 16 (D.D.C. 2008).

### aa. The Constitutional False Arrest Claim

The District of Columbia Circuit has noted that the elements of a constitutional false arrest claim are "substantially identical" to those of a common law claim of false arrest, Amobi, 755 F.3d at 989 (quoting Scott v. District of Columbia, 101 F.3d 748, 753 (D.C. Cir. 1996)), i.e., "whether the arresting officer was justified in ordering the arrest of the plaintiff," Scott, 101 F.3d at 754.[6] Here, the Proposed Fourth Amended Complaint alleges that "[d]efendant Cipullo's false statements to the MPD official initiated a criminal proceeding against [the p]laintiff," Proposed 4th Am. Compl. ¶ 145, that "[d]efendant Cipullo acted with malice against [the p]laintiff," id. ¶ 147, that the plaintiff "was arrested and detained absent a valid, truthful, or lawful basis," id. ¶ 148, and that the "judicial proceedings instituted by [d]efendant Cipullo's false statements against [the p]laintiff w[ere] caused by wrongful or improper motives, and without probable cause to bring[] or sustain [them]," id. ¶ 149; see also id. ¶ 151 (alleging that "[d]efendant Cipullo's primary purpose in providing false statements to the MPD official, which precipitated the events that led to institution and continuation of [the criminal] proceeding against [the p]laintiff, was for a purpose other than that of bringing an offender to justice").

---

[6] The circumstances of this case are unique because defendant Cipullo was not the arresting officer. However, the defendants do not argue that defendant Cipullo cannot be held liable for false arrest on that basis, see generally Defs.' Opp'n, and thus, the Court need not consider this issue.

Although the Supreme Court has made clear that the motivation behind the creation of the qualified immunity doctrine was "to ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery,'" Pearson, 555 U.S. at 231 (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)), and thus, "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation," id. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)), the Circuit has also stated that "[t]he issue of probable cause in a false arrest case is a mixed question of law and fact that the trial court should ordinarily leave to the jury," and "[o]nly where the facts are undisputed or clearly established does probable cause become a question of law for the court," Amobi, 755 F.3d at 990. Here, given that discovery has concluded, the "importance of resolving immunity questions at the earliest possible stage in litigation," see Pearson, 555 U.S. at 232, considering the limited record currently available to the Court, is arguably diminished. Other members of this Court have determined that qualified immunity cannot be decided before trial if disputed issues of fact regarding the reasonableness of an alleged seizure are present. See Singh v. District of Columbia, 55 F. Supp. 3d 55, 74 (D.D.C. 2014) ("It remains a disputed question of fact whether [the MPD police officer] violated [the plaintiff's] Fourth Amendment right through the traffic stop and the arrest. The Court therefore cannot conclude at this stage that the officer is shielded by qualified immunity."); Zhi Chen v. District of Columbia, 808 F. Supp. 2d 252, 259 (D.D.C. 2011) ("A defendant's entitlement to qualified immunity is a question of law to be decided by the court, although sometimes, as in this case, the facts establishing what the challenged conduct was are legitimately in dispute and must first be decided by the jury before the court answers the ultimate legal question whether a defendant is entitled to qualified immunity." (internal citation omitted)); Halcomb v. Woods, 767 F. Supp. 2d 123, 140 (D.D.C.

2011) (same); Halcomb v. Wash. Metro. Area Transit Auth., 526 F. Supp. 2d 20, 21–22 (D.D.C. 2007) ("With these factual matters in dispute in this [constitutional false arrest] case, the Court cannot decide before trial whether [the officer] is entitled to qualified immunity."); see also Wood v. District of Columbia, No. 14-2066 (EGS), 2017 WL 2374346, at *4–7 (D.D.C. May 31, 2017) (not resolving the qualified immunity issue until the summary judgment stage).

At this point, whether defendant Cipullo made false statements to the MPD or acted with corrupt intent in making those statements are questions of disputed material facts. Further, accepting the plaintiff's allegations as true, the Court concludes that the plaintiff has sufficiently alleged that defendant Cipullo knowingly made false statements to the MPD in order for the plaintiff to be arrested without probable cause. See Proposed 4th Am. Compl. ¶¶ 145–51, 153. And "it is well-established that 'an arrest without probable cause violates the [F]ourth [A]mendment." Ronkin v. Vihn, 71 F. Supp. 3d 124, 132 (D.D.C. 2014) (Walton, J.) (alterations in original) (quoting Martin v. Malhoyt, 830 F.2d 237, 262 (D.C. Cir. 1987)). Accordingly, the Court cannot conclude on the record available to it at this time, that defendant Cipullo is entitled to qualified immunity on the plaintiff's proposed constitutional false arrest claim, and therefore, the proposed claim cannot be declared futile.

bb. The Constitutional Malicious Prosecution Claim

Pitt clearly recognizes a constitutional claim for malicious prosecution, provided that a predicate Fourth Amendment violation exists. See Pitt, 491 F.3d at 511 ("We join the large majority of circuits in holding that malicious prosecution is actionable under 42 U.S.C. § 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized' without probable cause, in violation of the Fourth Amendment."). And because disputed questions of fact prevent the Court from resolving the issue of qualified immunity for the false arrest claim,

the predicate Fourth Amendment violation, based on the record currently available to it, the Court concludes that it is also too early to determine whether defendant Cipullo is entitled to qualified immunity as to the proposed constitutional malicious prosecution claim.[7]  Therefore, the plaintiff's proposed constitutional malicious prosecution claim at this point cannot be considered futile.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that the defendants have not shown that the plaintiff's motion for leave to amend should be denied based on the plaintiff's failure to cure prior deficiencies or on the grounds of undue delay or undue prejudice to the defendants.  The Court, however, finds that the plaintiff's proposed claims based on violations of the Fifth and Fourteenth Amendments, as well as his § 1983 claim against the District of Columbia, would be futile, and thus, denies the plaintiff leave to assert those claims.  Finally, the Court cannot conclude, based on the record currently before it, that the plaintiff's proposed claims alleging that defendant Cipullo violated his Fourth Amendment rights, whether under § 1983 or Bivens, are futile.  Accordingly, the Court must grant in part and deny in part the plaintiff's motion for

---

[7] Common law false arrest and malicious prosecution claims have alaredy been asserted by the plaintiff against the defendants, and constitutional false arrest and malicious prosecution claims proceed under the same analysis as the common law claims.  See Dingle v. District of Columbia, 571 F. Supp. 2d 87, 95 (D.D.C. 2008) ("Common-law and constitutional claims of false arrest are generally analyzed as though they comprise a single cause of action."); Thorp, 142 F. Supp. 3d at 146–47 (dismissing the § 1983 malicious prosecution claim for the same reason that it dismissed the common law malicious prosecution claim—the plaintiff failed to allege facts showing that the criminal prosecution was terminated in his favor); see also Creecy v. District of Columbia, No. 10–841 (CKK), 2011 WL 1195780, at *6 (D.D.C. Mar. 31, 2011) ("Because [the plaintiff] has properly asserted that there was no probable cause for his arrest, he has adequately stated a claim for malicious prosecution under § 1983.").  At no point have the defendants sought to dismiss the plaintiff's common law false arrest and malicious prosecution claims.  Accordingly, the defendants will seemingly suffer no harm in having these constitutional claims proceed so that they and the qualified immunity issue can be resolved on a full factual record, given that discovery has already been completed.  See Pearson, 555 U.S. at 231 (noting that the purpose of the qualified immunity doctrine is to prevent insubstantial claims from proceeding to discovery).

leave to file an amended complaint, and permits the plaintiff to file a fourth amended complaint

asserting only the claims not deemed futile.

**SO ORDERED** this 5th day of January, 2018.[8]

REGGIE WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.